## Bly *v*. White Deer Mountain Water Company.

*Water companies—Equity—Preliminary injunction—Filing bond.*

Where a bill in equity is filed against two water companies by a landowner to restrain them from taking water from a stream, and a preliminary injunction has been granted, it is error for the court to dissolve the preliminary injunction as to both companies, where one company only has filed a bond to secure the plaintiff in his damages.

*Water companies—Territorial limit—Charter—Acts of April 29, 1874, May 16, 1889, and July 2, 1895.*

Section 34 of the act of April 29, 1874, which grants to water companies the power to supply water in "the town, borough, city or district where they may be located," limits the authority of a water company to the municipal or quasi-municipal division in which it is located. Neither the power of eminent domain granted by the act of 1874, nor any other provision of the act of 1874, nor any provision of the acts of May 16, 1889, and July 2, 1895, give to water companies the power to supply water in

territory adjacent to the municipal or quasi-municipal division in which they are located. A provision in the certificate of incorporation granting power to supply water in adjacent territory is wholly inoperative, and such a certificate should not have been approved by the governor.

As a water company has no right to supply water in territory adjacent to the place in which it is located, it has no authority under its right of eminent domain to condemn and appropriate waters for such purposes; and if it attempts to do so, a landowner who is threatened with injury has a standing under the Act of June 19, 1871, P. L. 1360, in equity for an injunction to restrain such act.

*Corporations—Power—Charter—Statutes.*

There can be no authority or power conferred upon a corporation by the certificate or letters patent, except such as are clearly given by, or necessarily implied, from the language of the statute under which they are granted. Equally true is it that the rights and privileges of a corporation must be written in the charter or they do not exist. When a corporate body asserts its right to do a thing or to deprive an individual of its property, even for an adequate compensation, it must be able to show that the right is conferred by the plain and unequivocal language of its charter.

Argued May 8, 1900. Appeal, No. 436, Jan. T., 1900, by plaintiff, from decree of C. P. Union Co., Jan. T., 1900, No. 2, on bill in equity, in case of David Bly v. White Deer Mountain Water Company, White Deer Creek Water Supply Company and James I. Higbee, trading as Higbee Construction Company. Before Green, C. J., McCollum, Fell, Brown and Mestrezat, JJ. Reversed.

Bill in equity for an injunction.
Motion for preliminary injunction.

Love, P. J., filed the following opinion:

This is a bill filed by the plaintiff above named asking for an injunction to restrain the defendants from appropriating a portion of the waters of White Deer creek, for a water supply for the purposes of said water companies. Upon the presentation of the bill a preliminary injunction was granted, and the cause came on for hearing on motion to continue said injunction. The bill alleges that the plaintiff, David Bly, is the owner of a gristmill located on White Deer creek, in Union county; that the mill has been located there for about seventy-five years. With the mill he owns some twelve acres of land, including a dam and water power furnished by said creek. The present

dam was constructed and the capacity of the gristmill enlarged about eighteen years ago. The plaintiff is a lower riparian owner and is entitled to the flow of water in White Deer creek for the purposes of his mill, practically unlimited, except for domestic use by upper riparian owners, unless the defendant companies have the right to appropriate a portion of the stream under their charters.

The water power furnished by said creek is ample to run the plaintiff's mill about eight or nine months during the year; the other three or four months the water power is supplemented by the use of steam power.

The White Deer Mountain Water Company was chartered September 27, 1899, under the act of April 29, 1874, and its supplements, for the purpose of supplying water to the public in the township of White Deer, Union county, Pennsylvania, and to such persons, partnerships and associations, residing in or adjacent thereto, as may desire the same.

The White Deer Creek Water Supply Company was duly chartered, under the provisions of the same act of assembly and its supplements, August 11, 1897, " for the purpose of the storage, transmission, transportation and supply of water for commercial, manufacturing and other purposes in Kelly township, Union county, Pennsylvania."

The said defendants have entered upon the land of the plaintiff and are constructing a dam on White Deer creek about four or five miles above the plaintiff's property, for the purpose of taking water from said stream at that point for the purposes set forth in their respective charters. By petition to the court they have limited the amount of water they propose to take to two millions of gallons per day. They have purchased their mains and are digging trenches in which to lay them. The main pipe at the reservoir is sixteen inches in diameter. The defendant water companies contemplate furnishing a supply of water to the public in the borough of Lewisburg, to the borough of Watsontown and the borough of Milton. The borough of Lewisburg is in Union county, and is adjacent to Kelly township in said county and was originally a part of said township. The boroughs of Watsontown and Milton are in Northumberland county. The line between Northumberland and Union counties is the west bank of the Susquehanna river. Watson-

town gets its present supply of water from said White Deer creek taken from a point below the plaintiff's mill. Lewisburg gets its present supply of water from the Susquehanna river. The defendant companies endeavored to agree with the plaintiff, before proceeding to build their dam to take a portion of the water of White Deer creek and entering upon his lands, for the damages he may sustain. But no agreement was effected. They tendered him a bond in the sum of $5,500, which he declined to accept. The plaintiff then filed his bill and obtained a preliminary injunction restraining the defendants from proceeding with the laying of their pipes and appropriating a portion of the water of said stream, and thereby injuring his water power and mill property. The defendants filed the bond in court and presented a petition, limiting the amount of water they proposed to take to two millions of gallons per day, and obtained a rule upon plaintiff to show cause why he should not accept the bond. Whether the notice prescribed by the act of assembly in such case made and provided was given the plaintiff of the presentation of the bond for approval by the court and filing the same therein did not appear at the hearing. That the taking of the water proposed by said defendants from said creek will materially impair the plaintiff's water power is quite clear from the facts as they appeared. The foregoing are the material facts as they appear from the bill and answer and the evidence taken upon the hearing.

The important question raised by the pleadings and evidence, and contended for by the plaintiff, is that as it appears that the defendants propose to use the water taken by them to supply the public in Lewisburg, Watsontown and Milton with water, said boroughs, being outside of the townships of White Deer and Kelly, they have no right or authority under their charter to do so, and therefore have no right to condemn said White Deer creek and take the waters therefrom for such purpose to the injury of the plaintiff, and therefore should be perpetually enjoined. The question raised involves the question as to what are the manifest restrictions of the charter rights of the defendants as to the supplying of the public with water. If the charter rights of the company are so clearly restricted as to prohibit their exercising the right of eminent domain conferred by the charter, then the plaintiff may perhaps have some right to contest the

act of the defendants, under the provisions of the Act of June 19, 1871, P. L. 1360. If not so limited by the charter, then the plaintiff has no standing in this proceeding to contest the charter rights of the defendants. The Supreme Court, in the case of Western Pennsylvania Railroad Co.'s Appeal, 104 Pa. 399, in discussing the act of June 19, 1871, as to the right of a private party to inquire into or investigate the charter rights of a company, says: " The act of 1871 contemplates nothing more than it shall be made to appear from the charter that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant. But when we get beyond this we assume something with which we have no business in a collateral proceeding; we assume to assert the rights of a third party, the commonwealth, who may or may not, at her own option, insist upon the observance of those rights."

Measured by the rule laid down in that case, do the charters of the defendant companies show that they have the power thereunder to do the particular act complained of, which involves some right of the plaintiff in this case? If they do, then the plaintiff has no standing in this proceeding to warrant a continuance of the injunction.

Under the provisions of the general incorporation act of April 29, 1874, paragraph eleven of section 2, as amended by the act of May 16, 1889, companies may be chartered for the purpose of " supplying of water to the public or the supply, storage or transportation of water and water power for commercial and manufacturing purposes."

The 34th section of the act of April 29, 1874, defines the powers of companies incorporated under the provisions of the act to supply water to the public, or for the manufacture and supply of gas, or supply of light and heat, and provides for " supply to the district where located, and such persons, partnerships and corporations residing therein, or adjacent thereto, as may desire the same." This section also conferred upon water and gas companies exclusive privileges in the district embraced within the charter.

Clause three of section 34 of the act of April 29, 1874, conferring exclusive privileges, was repealed by the Act of June 2, 1887, P. L. 310, as to water companies. By a supplement passed July 2, 1895, P. L. 432, it is provided as follows: " Corpo-

rations heretofore incorporated under the act of assembly entitled 'An act to provide for the incorporation and regulation of certain corporations,' approved April 29, 1874, and the supplements thereto, for the supply, storage or transportation of water, and water power for commercial and manufacturing purposes, be and the same are hereby authorized and empowered to determine the character, design and construction of the works, and the use to be made of the water, and power of such companies, in order that the same may be supplied to the public to the best advantage."

It will readily appear that under the provisions of this act the water company is invested with the power to determine the use to be made of the water, in order that the same may be supplied to the public to the best advantage. It is not to the public of the particular district named in the charter. It is a pretty extensive power of discretion or judgment invested in the companies.

Could it be held that where a company was chartered for a borough, and had put in its plant, and the boundaries of the borough were afterwards materially enlarged, that the company to supply the additional territory taken into the borough limits would be obliged to have its charter amended in order to supply the additional territory so taken into the borough? We think that it could not be so held under the powers conferred by the act of April 29, 1874, and its supplements.

It is conceded that the charters of the defendant companies empower them, under the right of eminent domain, to appropriate as much of the waters of White Deer creek as may be necessary for their purposes in the townships of White Deer and Kelly, in Union county.

It is in the exercise of this right that the particular act in controversy is being done, that involves the right of the plaintiff complained of. Then what right in these proceedings has the plaintiff to complain that the companies in their judgment may use the water to supply the public elsewhere in adjacent districts, in addition to the public in White Deer and Kelly townships? Were the plaintiff a resident of Lewisburg or Watsontown, and the defendants had entered upon his premises to lay pipe or construct their works, he would no doubt be in a better position to raise the question he now seeks to raise, under

the provisions of the act of June 19, 1871. Then whether or not the defendants had the power under their charters to do the particular act that would involve some right of his might be perhaps properly raised in a proceeding of this kind under the provisions of the act of 1871. But we are of the opinion he has no standing to raise the question in this case, and that the provisions of the act of 1871 do not apply. He has a statutory remedy to secure adequate compensation for any injury done to his property by reason of the impairment of his water-power and mill as used by him, and for any servitude imposed upon his property by the defendants. For the foregoing reasons we are of the opinion the injunction should be dissolved.

Although it did not appear that any exceptions were filed to the bond filed by the defendants, only that it was not sufficient in amount, we, under all the evidence, think the defendants should file an additional bond, properly conditioned, in the sum of $2,000, making the sum total of the bond or security filed $7,500, the same to be approved by the court, the plaintiff to have notice of the filing of the same.

### DECREE.

This cause came on to be heard on motion to continue the preliminary injunction at this term and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed, that the defendants file an additional bond in the sum of $2,000, properly conditioned as above indicated, and upon the filing of the same and its approval by the court, the injunction heretofore granted is dissolved and the bill dismissed, the record costs to be paid by the parties, each one half, and each party to pay their own witnesses.

*Error assigned* was decree of the court.

*C. LaRue Munson*, with him *Philip B. Linn* and *Addison Candor*, for appellant.—A water company organized under the general corporation act of 1874 cannot supply the public in municipalities other than the one named in its charter, and particularly cannot pass beyond the boundaries limited by its charter and furnish water in an entirely different county: Penna. R. Co. v. Canal Commissioners, 21 Pa. 22; Lock Haven Bridge Co. v.

Clinton County, 157 Pa. 389; Com. v. Erie & N. E. R. R. Co., 27 Pa. 351; Chase v. Miller, 41 Pa. 403; M'Daniels's Case, 2 Clark, 310; City of New Castle Water Co. v. West New Castle Water Co., 18 Pa. C. C. Rep. 500; In re Monongahela Water Co., 9 Pa. C. C. Rep. 58.

The owner of a water power specially damaged by taking away the water to supply other municipalities has a right to question this act of the corporation by invoking the provisions of the Act of June 19, 1871, P. L. 1360, and call upon the corporation to show by its charter that it does in fact possess the franchise to do this act: Western Penna. R. Co.'s App., 104 Pa. 399; Sterling's App., 111 Pa. 41; Germantown Pass. Ry. Co. v. Citizens Pass. Ry. Co., 151 Pa. 138; Penna. R. Co. v. Greensburg, etc., Electric Street Ry. Co., 176 Pa. 576; Edgewood R. R. Co.'s App., 79 Pa. 268; Phila. & Merion Ry. Co.'s Petition, 187 Pa. 130; Hopkins v. Catasauqua Mfg. Co., 180 Pa. 204; Thomas v. Inter-County Street Ry. Co., 167 Pa. 120; Lehigh Coal, etc., Co. v. Inter-County Street Ry. Co., 167 Pa. 75; Potts v. Quaker City Elevated R. R. Co., 161 Pa. 396; Masson's App., 70 Pa. 26; Reading v. Althouse, 93 Pa. 400.

*Andrew A. Leiser*, for appellee.—There is no limitation as to territory by statute: Charter of Gas Co. of Lancaster Rept. of Secry., Dec. 1, 1896, p. 39; Freeport Water Works Co. v. Praeger, 129 Pa. 605; Praeger's App., 129 Pa. 619.

That such right exists and is recognized by statute and by the courts is shown further by the following acts of assembly: Act of May 16, 1889; July 2, 1895, P. L. 432.

The acts of the assembly thus declaring the broad and unrestricted rights and powers given to these corporations are supplemented by the following cases: Keller v. Riverton Water Co., 161 Pa. 422; Malone v. Lancaster Gas Light & Fuel Co., 182 Pa. 309.

That such right exists and is recognized by the state department is shown by the charters issued by it to water and water supply companies.

But even if the exercise of such a right, notwithstanding it is recognized and conferred in terms by the language of the charter, could be called in question, it can only be done by the commonwealth in a direct proceeding to that end and not by

a private individual in a collateral proceeding such as this : Irvine v. Lumberman's Bank, 2 W. & S. 190 ; Dyer v. Walker, 40 Pa. 157 ; Bone v. Del. & Hud. Canal Co., 18 W. N. C. 125 ; Cochran v. Arnold, 58 Pa. 399 ; Freeland v. Penna. Ins. Co., 94 Pa. 504 ; Pittsburg, etc., R. R. Co. v. County of Allegheny, 63 Pa. 126 ; Goundie v. Northampton Water Co., 7 Pa. 233 ; Wright v. Pipe Line Co., 101 Pa. 204 ; Buck Mountain Coal Co. v. Lehigh Coal & Nav. Co., 50 Pa. 91 ; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401 ; Pa. Schuylkill Val. R. R. Co. v. Phila. & Reading R. R. Co., 160 Pa. 277 ; Saylor v. Pa. Canal Co., 183 Pa. 167 ; Twelfth St. Market Co. v. Phila. & Reading Terminal R. R. Co., 142 Pa. 580 ; Western Pa. R. R. Co.'s App., 104 Pa. 399 ; Union Nat. Bank v. Matthews, 98 U. S. 621 ; Com. v. McCarter, 98 Pa. 606 ; Grant v. Henry Clay Coal Co., 80 Pa. 208 ; Junction Pass. Ry. Co. v. Williamsport Pass. Ry. Co., 154 Pa. 116 ; Phila. & Gray's Ferry Pass. Ry. Co.'s App., 102 Pa. 123 ; Com. v. Allegheny Bridge Co., 20 Pa. 185 ; Murphy v. Farmers' Bank, 20 Pa. 415 ; 13th & 15th St. Pass. Ry. Co. v. So. Pass. Ry. Co., 3 Pa. Dist. Rep. 337 ; Turnpike Co. v. Jenkintown Electric Ry. Co., 4 Pa. Dist. Rep. 8 ; Phila. & Merion Ry. Co.'s Petition, 187 Pa. 123 ; Western Pa. R. R. Co.'s App., 104 Pa. 399.

The remedy in the present case is that prescribed by statute, to wit : the ascertainment of plaintiff's damages by a jury of view, etc., injunction will not lie : Cameron Furnace Co. v. Pa. Canal Co., 2 Pearson, 208 ; Travaglini v. Societa Italiane, 5 Pa. Dist. Repr. 441 ; Lejee v. Continental Pass. Ry. Co., 10 Pa. 362 ; Twelfth St. Market Co. v. Phila. & Reading Terminal R. R. Co., 142 Pa. 580 ; Phila. & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418.

Plaintiff has shown no right to an injunction : Clark's App., 62 Pa. 447 ; Jerome v. Ross, 7 Johns. Ch. 315 ; Richards's App., 57 Pa. 105 ; Penna. R. Co. v. Greenwood, etc., Electric Street Ry. Co., 184 Pa. 227 ; Heilman v. Lebanon & Annville St. Ry. Co., 175 Pa. 188.

*C. LaRue Munson*, with him *Philip B. Linn* and *Addison Candor*, for appellant in reply.—The following cases, cited by appellee, were all decided before the passage of the act of June 19, 1871, and are therefore not in point : Irvine v. Lum-

bermen's Bank, 2 W. & S. 190; Dyer v. Walker, 40 Pa. 157; Cochran v. Arnold, 58 Pa. 399: Pitts., etc., R. R. Co. v. County of Allegheny, 63 Pa. 126; Goundie v. Northampton Water Co., 7 Pa. 233; Buck Mountain Coal Co. v. Lehigh Coal, etc., Co., 50 Pa. 91; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

OPINION BY MR. JUSTICE MESTREZAT, July 11, 1900:

David Bly, the plaintiff, is the owner of a gristmill, dam and water power located on White Deer creek, in Union county, Pennsylvania. He filed a bill in this case in the court below for an injunction against the White Deer Mountain Water Company, the White Deer Creek Water Supply Company and James I. Higbee, trading as the Higbee Construction Company, to restrain them from interfering with his riparian and other rights in the manner hereinafter stated.

The bill was filed October 26, 1899, and avers that the White Deer Mountain Water Company was incorporated September 27, 1899, under the act of April 29, 1874, and its supplements for the purpose of (quoting from its charter) "supplying water to the public in the township of White Deer, Union county, state of Pennsylvania, and to such persons, partnerships and associations residing in or adjacent thereto as may desire the same;" that the White Deer Creek Water Supply Company was incorporated under the same statutory authority, "for the purpose of the storage, transmission, transportation and supply of water for commercial, manufacturing and other purposes in Kelly township, Union county;" that the said two first mentioned defendants, or one of them, are proceeding to build across the said White Deer creek a dam and a reservoir to hold the waters of said creek and therefrom to divert and take away the said water and to supply the same to the public in said townships of White Deer and Kelly, in said county, and in other municipalities, boroughs and townships in this commonwealth, and to that end are proceeding to dig ditches and trenches and therein to lay mains and pipes for the transmission of said water from the said dam and reservoir to the said municipalities, boroughs and townships; in the construction of said reservoir and dam and in digging of said ditches and trenches and laying of said mains and pipes the said James I. Higbee, trading as the Higbee Construction Company, is the con-

tractor for the other said defendants, or one of them ; that the
defendants, or some of them, have threatened to dig ditches
across the plaintiff's mill race and property, and have already
entered thereon for that purpose, to his irreparable injury and
damage ; that neither the said White Deer Mountain Water
Company, nor the White Deer Creek Water Supply Company
has any power, authority or right to supply water to the public
outside of the said townships of White Deer and Kelly, in said
Union county ; that neither of the defendants has tendered or
secured compensation to the plaintiff for the injuries thus done
and threatened to be done to his private property. The bill
further avers that said dam and reservoir will take the waters
of White Deer creek at a point above the plaintiff's property
and above his dam and mill race, whereby his water power will
be destroyed and irreparable injury will be done to him and his
property. The bill contains additional averments but those re-
cited raise the questions for decision and they are substantially
admitted as averred, except that the defendants deny that their
action will cause the plaintiff irreparable injury and that de-
fendants have no authority to supply water outside of the town-
ships of White Deer and Kelly. The bill prays, inter alia, for
an injunction to restrain the defendants from taking the waters
of White Deer creek for the purpose of supplying the same to
the public in any municipality, borough or township other than
the townships of White Deer and Kelly in Union county; and
also to restrain them from entering upon the plaintiff's premises
and digging ditches and laying pipes therein until compensa-
tion therefor has been secured him. A preliminary injunction
was awarded against the defendants.

At the hearing it was developed that the White Deer Moun-
tain Water Company intended to supply the water to be taken
from White Deer creek to the inhabitants of Watsontown,
Northumberland county, separated from White Deer township,
Union county, by the Susquehanna river, and also to supply the
same in the borough of Lewisburg, in Union county, adjacent
to Kelly township, but not adjacent to White Deer township,
the former township lying between the latter township and
Lewisburg. The present supply of water is obtained by the
defendant companies from White Deer creek below plaintiff's
premises. It further appears that the day after the writ in this

case issued, the White Deer Mountain Water Company tendered a bond to the plaintiff which was refused, and that the day thereafter, the bond, with a petition for its approval, was filed in court. The bond was not approved by the court until November 17, 1899, on which day an additional bond from the same company to the plaintiff was also approved. No bond to the plaintiff was tendered or filed for approval by the White Deer Creek Water Supply Company or by the Higbee Construction Company, the other two defendants.

From this statement of the facts, it is apparent that when this bill was filed, on October 26, 1899, neither of the defendant companies had the right to appropriate the waters of White Deer creek at the point they were constructing their dam, and they were not justified in entering upon plaintiff's premises to dig their ditches and to lay their water mains. Upon the filing of his bill, therefore, the plaintiff was entitled to an injunction, to be continued until the defendants satisfied the court that they legally had the right to appropriate the waters of White Deer creek and to enter upon his premises to lay their pipes. From the record it appears that on November 15, 1899, the court below entered a decree that, upon the filing of an additional bond and the approval thereof by the court, the preliminary injunction should be dissolved as to all the defendants and that the plaintiff's bill should be dismissed. This action of the court was clearly erroneous, at least as to the White Deer Creek Water Supply Company and its employees. It had not tendered or secured compensation to the plaintiff for its intended appropriation of his property and, therefore, should have been restrained by a permanent injunction. So far as the White Deer Creek Water Supply Company is concerned the bill must be reinstated and the injunction made permanent. The only questions, therefore, for consideration here are (1) the right of the White Deer Mountain Water Company to appropriate the waters of White Deer creek for the purpose of supplying the same to the public in any municipality, borough or township other than White Deer township, in Union county, and (2) the right of the plaintiff to have that question determined by a court of equity in a proceeding under the provisions of the act of June 19, 1871.

The first question is an important one, and requires the con-

sideration of the general corporation act of April 29, 1874, and
its supplements, under which the defendant corporation holds
its corporate rights.   The charter must be supported by this
legislation or it falls.   The certificate of incorporation as well
as the letters patent issued to a corporation by the governor
must conform to, and comply with the statutory requisites.
There can be no authority or power conferred upon a corpora-
tion by the certificate or letters patent, except such as are
clearly given by, or necessarily implied, from the language of
the statute under which they are granted.   Equally true is it
that the rights and privileges of a corporation must be written
in the charter or they do not exist.   When a corporate body
asserts its right to do a thing or to deprive an individual of his
property, even for an adequate compensation, it must be able
to show that the right is conferred by the plain and unequivocal
language of its charter.   The language of Chief Justice BLACK
in Commonwealth v. Erie, etc., Railroad Company, 27 Pa. 351,
may be appropriately quoted in this connection: "That which
a company is authorized to do by its act of incorporation," says
the chief justice, "it may do; beyond that all its acts are
illegal.   And the power must be given in plain words or by
necessary implication.   All powers not given in this direct and
unmistakable manner are withheld. . . . If you assert that a cor-
poration has certain privileges, show us the words of the legis-
lature conferring them.   Failing in this, you must give up
your claim, for nothing else can possibly avail you.   A doubt-
ful charter does not exist; because whatever is doubtful, is
decisively certain against the corporation."

Under the act of 1874, corporations are divided into two
classes: the first class, or those not for profit, the second class,
or those for profit.   The defendant is a corporation of the sec-
ond class.   The ninth paragraph of the 2d section of the act
authorized the incorporation of companies for "the supply of
water to the public."   The eighteenth paragraph of the same
section provides for the formation of companies for, inter alia,
"the storage and transportation of water, with the right to
take rivulets and land, and erect reservoirs for holding water."
The second clause of the 34th section of the act provides that
"where such company shall be incorporated for the supply of
water, they shall have power to provide, erect and maintain all

works and machinery necessary or proper for raising and introducing into the town, borough, city or district where they may be located, a sufficient supply of pure water," and for that purpose they were authorized, inter alia, to occupy, ditch and lay pipes through streets, etc., "subject to such regulations in regard to streets, roads, lanes and other highways as is provided in the foregoing section for gas companies." The 41st section of the act provides the manner in which damages for property taken by the water company shall be determined when the parties cannot agree upon the compensation for the damage done. The 3d section of the act provides the mode of incorporation and requires the charter to set forth, inter alia, "the purposes for which it is formed," and "the place or places where its business is to be transacted." A supplement to the act of 1874 was approved May 16, 1889, and it amended the ninth paragraph of the 2d section of the act so as to authorize the incorporation of companies for "the supply of water to the public," or "the supply, storage or transportation of water and water power for commercial and manufacturing purposes." Clause two of the 34th section of the act of 1874 was also amended by the act of 1889, so as to provide, inter alia, that such companies "shall have power to provide, erect and maintain all works and machinery or power for raising and introducing into the town, borough, city or district where they may be located, a sufficient supply of pure water, with water and water power as aforesaid." The act of 1889 did not extend or change the territorial limits in which water companies were authorized to supply water under the act of 1874.

An examination of the Act of July 2, 1895, P. L. 432, shows that the authority and powers granted by the act are confined to companies incorporated for "the supply, storage or transportation of water and water power for commercial and manufacturing purposes," and that it does not extend the territorial limits in which such companies may exercise their rights and privileges, and does not apply to, or confer any powers on, companies incorporated for "the supply of water to the public." It, therefore, cannot affect the rights of either party to this controversy.

It is contended by the defendant that as to water companies organized under the act of April 29, 1874 and its supplements,

there is no territorial limitation or restriction on their right to supply water to the public, and that the defendant company has authority to supply water not only to the public in White Deer township, but also to "such persons, partnerships and associations residing in and adjacent thereto as may desire the same." In support of this contention and to show that such was the intention of the legislature in the enactments under consideration the defendant's counsel cites the fact that water companies have the right of eminent domain; that an individual has the right to lay pipes through the streets of a borough and supply its inhabitants with water notwithstanding the incorporation of a company for this purpose with an exclusive franchise; and that the 2d section of the act of May 16, 1889 authorizes a water company to appropriate "so much of the water from the rivers, creeks, canal water-rights and easements, within or without the limits of the city, borough or place in which said company may by its charter be located, as may be necessary for its purposes." It is further maintained that the defendant's contention is supported by the construction put upon the act of 1874 and its supplements by the state department which, it is claimed, does not impose any territorial restrictions in the charters issued by the department.

The learned court below, in its opinion, considered the case as against both of the defendant companies and held that "if the charter rights of the companies are so clearly restricted as to prohibit their exercising the right of eminent domain conferred by the charter, then the plaintiff may perhaps have some right to contest the act of the defendants under the provisions of the Act of June 19, 1871, P. L. 1360. If not so limited by the charter, then the plaintiff has no standing in this proceeding to contest the charter rights of the defendants." In his argument to sustain the position that the defendant has the right to supply water to the public outside of White Deer township, the learned judge quotes, as applicable to water companies, that part of section 34 of the act of April 29, 1874, by which a gas company is authorized to supply gas light to the district where it is located, "and such persons, partnerships and corporations residing therein, or adjacent thereto as may desire the same." He also cites the Act of July 2, 1895, P. L. 432, in support of his position. He further holds that the

plaintiff "has no standing to raise the question in this case, and the provisions of the act of 1871 do not apply."

As we have said, the contention here is between the plaintiff and the White Deer Mountain Water Company. The failure of the supply company to give the bond required by the statute eliminated it from the case and prevents the water company from defending itself through any charter rights which the supply company may possess.

Section 34 of the act of 1874 defines and limits the powers to be granted to water and gas companies. But it is done in two separate clauses of the section, and the rights and privileges conferred upon each must be ascertained from the clause in which they are granted. The first clause is devoted to gas companies and companies organized to supply heat and light to the public, and therein is granted to such companies the authority to supply with gas light, the borough town, city or district where they may be located, "and such persons, partnerships and corporations residing therein, or adjacent thereto, as may desire the same." The powers of a water company are conferred by the second clause, but the phrase just quoted or no similar expression appears in the clause. The inclusion of the phrase in the case of gas companies justifies the inference that its omission in the case of water companies was intentional. Hence it must be presumed that the legislature did not intend to confer such authority on water companies.

The act of 1874 authorized the formation of water companies for the purpose of supplying water to the public. But this was not the extent of the legislative enactment. The act went further and defined the powers of such companies so explicitly that they need and should not be misapprehended. The act provides that water companies incorporated under its provisions shall have the power to supply water in "the town, borough, city or district where they may be located." This language clearly and expressly limits the authority of a water company to the municipal or quasi-municipal division in which it is located. It can exercise its corporate functions in only a single territorial division, and that division is where it "may be located." Such is the plainly written command of the statute, and it will permit of no other reasonable construction. The word "district," used in the act, having no qualifying adjective

to indicate its extent or meaning, is not to be construed as extending the territorial limits in which the corporation may supply water beyond those given it by the prior words used in that connection. It may embrace a township or a part of one of the political divisions mentioned immediately preceding it, but not two or more of them.

That the right of eminent domain is conferred on water companies does not, as argued, enlarge the territory in which they may supply water, or show a legislative intention to grant them additional territory in which to exercise their corporate rights. It, in no way, affects or determines the territorial limitations of such companies. That right must be exercised for the purpose of enabling the company to supply water to the public within its charter limits. For the purpose of supplying water beyond those limits, the authority thus granted cannot be invoked to assist water companies in the appropriation of water to the injury of riparian rights. Nor is the defendant's position strengthened by the fact that under the 2d section of the act of 1889 a water company has the right to appropriate water for its use outside the limits of the place where it is located. On the contrary it is a significant fact that tends strongly to support the opposite theory. That the right thus acquired needed express legislation to grant it affords a strong and convincing reason for withholding the authority to furnish water outside the limits of the place where the company is located when it is not conferred by direct and positive terms in the statute. The same may be said of the provision in the second clause of the 34th section of the act of 1874 making streets, etc., subject to the regulations provided in the first clause of the section for gas companies. It shows a legislative intention not to extend the rights and powers of gas companies to water companies, except where it is expressly so stated.

It is asserted by both parties to this controversy and used as an argument by them to support their respective positions, that the uniform ruling of the state department in issuing charters supports their contention. The opinions of that department have been cited and they seem to sustain the contention of both litigants. There is one logical conclusion to be drawn from this conflict of opinion and that is that the language of the act under which the charters are granted does not plainly

and unequivocally confer the right on such corporations to supply water outside the place where they are located. This doubt of the right of the corporation to exercise such authority is of itself sufficient to warrant the denial of the right. " In the construction of a charter," says Chief Justice BLACK in Pennsylvania Railroad Company v. Canal Commissioners, 21 Pa. 22, " to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England. No other has ever received the sanction of any authority to which we owe much deference. This court has asserted it times without number. . . . If the usefulness of the company would be increased by extending them, let the legislature see to it. But let it be remembered that nothing but plain English words will do it."

As we have already said the supplemental act of July 2, 1895, does not strengthen the defendant's contention or affect the question now under consideration. It empowers corporations incorporated for " the supply, storage and transportation of water and water power for commercial and manufacturing purposes ; " to determine the character, design and construction of the works and the use to be made of the water and water power of such companies in order that the same may be supplied to the public to the best advantage; to locate, maintain and operate their works, machinery, dams, etc., under the act of 1874 and its supplements ; to contract for the construction and maintenance of their works, and to mortgage their property to secure the indebtedness incurred in the construction of their works, or as a guaranty for the performance of their contracts. It will be observed that this act does not define the territorial limits within which such companies may exercise their powers, nor in any way refer to the subject. Even, therefore, if it applied to water companies, instead of supply companies only, it would not affect the issue in this controversy.

So far, we have endeavored to ascertain and determine the powers and privileges conferred on water companies by the act of 1874, with special reference to their right to supply water to the inhabitants of the territory adjacent to the place where they are located. That right, as we have seen, was not given by the act. Has such authority been conferred by subsequent legis-

VOL. CXCVII—7

lation? Our attention has not been called to any supplemental legislation that enlarges or extends the limits within which a water company may supply water beyond those fixed by the act of 1874. We have already referred to the act of 1889, and it is seen that it does not confer authority on water companies to supply water in territory adjacent to the place where they are located. Neither does the act of 1895 authorize water companies to exercise such rights.

It will hardly be maintained that, without statutory authority, the defendant company has the right to supply water in Watsontown and Lewisburg by reason of the insertion in its certificate of incorporation of the words, " and to such persons, partnerships and associations residing in and adjacent thereto as may desire the same." It is the duty of the governor to examine the certificate of incorporation, " and if he find it in proper form and within the purposes named in the second class, specified in the foregoing (2d) section, he shall approve thereof . . . . and direct letters patent to issue in the usual form," and after the recording of the certificate, " the subscribers thereto, and their associates and successors shall be a corporation for the purposes and upon the terms named in the said charter." It is thus seen that the governor should not approve the certificate unless it is in proper form and within the purposes clearly named in the statutory authority, from which alone the corporation can acquire its powers and privileges. No other or greater powers can be conferred by the certificate than those authorized by the statute. It necessarily follows, therefore, that including in the defendant's certificate of incorporation the language just quoted therefrom does not confer upon the corporation the power to supply water in adjacent territory.

We are of opinion that a corporation created and existing under the provisions of the act of April 29, 1874 and the supplements thereto, for the purpose of supplying water to the public, is not authorized to supply the same beyond the single territorial division in which it is located. The White Deer Mountain Water Company, the defendant, therefore, has no authority, under its charter, to supply water to the public in any municipality, borough or township other than White Deer township, in Union county, and, in carrying out the authorized purposes of its incorporation, the company is confined to the limits of that township.

As the defendant company has no right to supply water in territory adjacent to White Deer township, it has no authority under its right of eminent domain to condemn and appropriate waters for such purposes. The right to condemn water depends upon the purpose for which the company may lawfully use it. It cannot take, by its right of eminent domain, the plaintiff's property for a purpose for which, under its charter, it has no right to use it. The act of 1889 confers power upon the company to appropriate so much of the water of a stream within or without the place it is located, "as may be necessary for its purposes." But it does not grant the company the power under its right of eminent domain to condemn water for the purpose of supplying it to the public beyond the territorial limits to which its charter confines it.

The other question which invites attention and requires consideration is the right of the plaintiff to invoke the assistance of a court of equity under the Act of June 19, 1871, P. L. 1360, to restrain the defendant company from illegally taking the waters of White Deer creek to the detriment of his riparian rights. It is contended by the learned counsel of the appellee and held by the court below, that he cannot appeal to that act for protection against the infringement of his rights by the defendant company.

In the fifth paragraph of the bill it is averred that the defendant is proceeding to divert and take away the waters of White Deer creek to supply the same to the public of White Deer township, "and in other municipalities, boroughs and townships in this commonwealth." The defendant's answer admits the averment, but alleges that the quantity to be taken will be limited to 2,000,000 gallons per day. It is not controverted, therefore, that the defendant intends to appropriate to its use the property of the plaintiff without legal authority to do so under the franchise granted it by the commonwealth.

The act of 1871 provides "that in all proceedings in courts of law or equity of this commonwealth, in which it is alleged that the private rights of individuals . . . . are injured or invaded by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court . . . . to examine, inquire and ascertain whether such corporation does in fact possess the right or fran-

chise to do the act from which such alleged injury to private rights . . . . results; and if such rights or franchises have not been conferred upon such corporation, such courts, if exercising equitable power shall, by injunction, at suit of the private parties . . . . restrain such injurious acts." The language of the act is clear and its application to the case in hand is without difficulty. The private rights of the plaintiff in the waters of White Deer creek have been threatened, and if the water is taken by the defendant company he will be injured. The only authority claimed by the defendant to sustain its action in appropriating the water of the stream to its use is the franchise granted in its charter. The plaintiff, therefore, seeks by this proceeding " to have the right or franchise to do the act," claimed to be authorized by the charter of the company, examined and ascertained, "and if such rights or franchises have not been conferred upon such corporation," he asks the court to restrain the defendant. We deem it unnecessary to cite authorities to show that the plaintiff is entitled to the remedy he invokes.

The plaintiff is not assailing the charter of the defendant company. It is conceded that the company has authority after securing compensation to the parties entitled thereto to take the water of White Deer creek for the purpose of supplying it to the inhabitants of White Deer Creek township. This right is not denied nor sought to be abridged. But it is denied that defendant has, under the franchise granted it by the commonwealth, the right to appropriate, to the plaintiff's special damage, the water of that stream for the purpose of supplying adjacent territory. This proceeding, therefore, was instituted by the plaintiff, who, as said in Western Pennsylvania Railroad Company's Appeal, 104 Pa. 399, " under the provisions of the act of 1871, has the undoubted right to call upon the defendant, to show, by its charter, that it has the power to do what it proposes to do."

The decree of the court below is reversed, and it is ordered, adjudged and decreed that the plaintiff's bill be reinstated and that the preliminary injunction granted by the court restraining the defendants from the commission of the acts complained of in the plaintiff's bill be made permanent. Costs of this appeal and in the court below to be paid by the appellees.