## Commonwealth ex rel. Attorney-General v. The Ministers Protective Society.

*Beneficial societies — Reports to Insurance Commissioner — Insolvency— Issuing accident policy to members—Violation of law—Forfeiture of charter —Acts of May 17, 1921, and May 20, 1921.*

1. A corporation known as The Ministers Protective Society, organized to provide protection to its members at cost by maintaining funds from dues to be used in case of sickness or death of its members, is not an insurance company or a fraternal benefit society, but is a beneficial society, and as such required to report to the Insurance Commissioner as required by section 29 of the Act of May 20, 1921, P. L. 916.

2. Such society is not insolvent nor in such condition that further transaction of its business will be hazardous to its policy-holders, its creditors or the public within the meaning of the Act of May 17, 1921, § 502, P. L. 789, so long as it is able to pay its debts in the ordinary and usual course of its business and any loss accruing on benefit certificates can be met by dues, premiums and miscellaneous income of the society.

3. Neither is it subject to the charge of wilfully violating the law or its charter merely because it issues an accident benefit policy to members for which it charges annual dues.

Rule to dissolve beneficial society.   C. P. Dauphin Co., Commonwealth Docket, 1927, No. 31.

*Paul C. Wagner*, Deputy Attorney-General, for Commonwealth.

*Sterling G. McNees* and *Thomas & Thomas*, for defendant.

Fox, J., July 5, 1927.—In this case, on April 27, 1927, a suggestion and order for rule to show cause was filed by the Attorney-General, praying that an order directing that The Ministers Protective Society show cause why its business should not be closed and the Insurance Commissioner should not take possession of its property; and, further, why its business should not be liquidated by and under the direction of the Insurance Commissioner and the company should not be dissolved, and for such other relief as the nature of the case and the interests of its members, its creditors and the public may require.   No answer was filed to this suggestion and order, and on May 2, 1927, the rule was made absolute and an order of dissolution as prayed for was granted.   On May 17, 1927, a motion was made by the defendant, in which it set forth that there was a misunderstanding between counsel for the defendant, as a result thereof and the failure to notify the defendant, the rule to show cause was made absolute to the great injury of the defendant; it also denied that the corporation is insolvent or is in such a condition that its further transaction of business would be hazardous to its members, to its

creditors and to the public, and that it has wilfully violated the provisions of the Act of Assembly approved May 23, 1891, P. L. 107, or that it has violated any provisions of any law of the Commonwealth. It also averred that it is a beneficial society, and as such is not subject to the jurisdiction of the Insurance Department of our State. Whereupon a rule was granted upon the Attorney-General to show cause why the order and decree heretofore issued in this case should not be stricken from the record and the rule dismissed. An answer to this latter rule was filed by the Attorney-General on May 19, 1927, in which the identity of the corporation was admitted and that a rule was granted and made absolute on May 2nd, but denied that no notice was received by the defendant corporation, and averred that both the officers and the duly authorized attorneys of the defendant corporation had notice and knowledge of the order and rule aforesaid. It also denied that acceptance of service of the rule was made absolute as a result of any misunderstanding or of any failure to notify the defendant, or that the making absolute of said rule was to the great injury of said defendant. It further averred that the defendant corporation is insolvent, in that the present value of the promised benefits provided in the constitution and by-laws of the defendant corporation under outstanding certificates, plus accrued liabilities, are in excess of the present value of the future net distributions provided in said constitution and by-laws, plus actual assets, by more than $675,000, and that said corporation is in such a condition that its further transaction of business would be hazardous to its members, its creditors and to the public. It averred, also, that the defendant corporation has violated the provisions of the Act of Assembly of the Commonwealth approved May 23, 1891, P. L. 107. It admitted that said defendant was incorporated as a beneficial society, but it averred that it, by reason of its class of business, has ceased to be a beneficial society solely, but is also doing a general insurance business, and, therefore, is subject to the jurisdiction of the Insurance Department under the Insurance Department Act approved May 17, 1921, P. L. 789, and under sections 14 and 29 of the Act approved May 20, 1921, P. L. 916.

A hearing was had and testimony was being taken when the court struck off the rule and order dissolving the defendant corporation. Further testimony was then taken, and it was agreed that all of the allegations set forth in the suggestion and in the answer of the Commonwealth to the defendant's rule should be taken as included in the suggestion for dissolution, and the petition for the rule by the defendant should be taken as defendant's answer to the suggestion, and all as being properly pleaded.

We, therefore, have before us a suggestion filed by the Commonwealth of Pennsylvania, upon relation of the Attorney-General, to dissolve and liquidate the defendant corporation and the answer of the latter.

Three important questions present themselves to us, viz.:

1. Is this corporation an insurance company, a beneficial society or a fraternal benefit society?

2. Has the Insurance Commissioner jurisdiction over all of these organizations?

3. Is the defendant corporation insolvent? Will the further transaction of business be hazardous to its policy-holders, its creditors and to the public? Has the defendant corporation wilfully violated its charter or any law of the Commonwealth?

An insurance company, as defined by the Supreme Court of our State in the case of Com. v. Equitable Beneficial Ass'n, 137 Pa. 412, is a company whose general object or purpose "is to afford indemnity or security against

loss; its engagement is not founded in any philanthropic, benevolent or charitable principle; it is a purely business adventure, in which one, for a stipulated consideration or premium per cent., engages to make up, wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to loss of property, to personal injury or to loss of life. To grant indemnity or security against loss for a consideration is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance."

In the same case a beneficial society has been defined as being a company having "A wholly different object and purpose in view. The great underlying purpose of the organization is not to indemnify or to secure against loss; its design is to accumulate a fund from the contributions of its members, 'for beneficial or protective purposes,' to be used in their own aid or relief, in the misfortunes of sickness, injury or death. The benefits, although secured by contract, and for that reason to a limited extent assimilated to the proceeds of insurance, are not so considered. Such societies are rather of a philanthropic or benevolent character; their beneficial features may be of a narrow or restricted character; the motives of the members may be to some extent selfish, but the principle upon which they rest is founded in the considerations mentioned. These benefits, by the rule of their organization, are payable to their own unfortunate out of funds which the members have themselves contributed for the purpose, not as an indemity or security against loss, but as a protective relief in case of sickness or injury, or to provide the means of a decent burial in the event of death. Such societies have no capital stock. They yield no profit, and their contracts, although beneficial and protective, altogether exclude the idea of insurance, or of indemnity, or of security against loss."

A fraternal benefit society, as defined by the Act of May 20, 1921, § 1, P. L. 916, is: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries and not for profit, having a lodge system with ritualistic form of work and a representative form of government, and which makes provision for the payment of benefits in accordance with the provisions of this act."

An examination of the charter of this society and the evidence taken in the case discloses that this society is not an insurance company. It is also apparent that it is not a fraternal benefit society, for the reason that it does not come within the purview of the above definition, for it does not have a lodge system with ritualistic form, and for the further reason that it did not comply with the Act of April 6, 1893, P. L. 10, which, amongst other things, provides: "Any fifteen or more persons, nine of whom shall be citizens and residents of this Commonwealth, having associated themselves as a secret fraternal beneficial society, order or association, may be incorporated under the provisions of this act." Nor did it take advantage of the Act of April 6, 1893, P. L. 7, which in substance provides for a change from a beneficial society to a fraternal benefit society.

It is true that in the 7th section of the charter of the defendant corporation it is designated as a fraternal benefit society in the following language: "This is a fraternal benefit society and has no capital stock, but certificates of membership will be issued to each of its members." But in the 2nd section the purpose of the corporation is set forth as follows: "To provide protection to its members at actual costs, by maintaining funds from dues collected from its members, to be used for beneficial and protective purposes in case of sick-

ness, disability or death of its members." Nowhere else is the purpose of the society set forth. In the case of Bank of Pennsylvania v. Com., 19 Pa. 144, the court, at page 155, said: "If anything is settled, it is this rule of construction, that a corporation takes nothing by its charter except what is plainly, expressly and unequivocally granted; and that in all things else the powers which the State may exercise over its affairs are as full and ample as if it were an individual carrying on the same business." And in the case of Bly v. White Deer Mountain Water Co., 197 Pa. 80, 92, the court said: "The certificate of incorporation as well as the letters-patent issued to a corporation by the Governor must conform to and comply with the statutory requisites. There can be no authority or power conferred upon a corporation by the certificate or letters-patent, except such as are clearly given by, or necessarily implied from, the language of the statute under which they are granted. Equally true is it that the rights and privileges of a corporation must be written in the charter or they do not exist. When a corporate body asserts its right to do a thing or to deprive an individual of his property, even for an adequate compensation, it must be able to show that the right is conferred by the plain and unequivocal language of its charter. The language of Chief Justice Black in Com. v. Erie, etc., R. R. Co., 27 Pa. 351, may be appropriately quoted in this connection: 'That which a company is authorized to do by its act of incorporation it may do; beyond that all its acts are illegal. And the power must be given in plain words or by necessary implication. All powers not given in this direct and unmistakable manner are withheld. If you assert that a corporation has certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist, because whatever is doubtful is decisively certain against the corporation.' "

The settled rule, as we have noted above, has not been changed, and in defining the powers of a corporation we must look to the purpose set forth in the charter and not to the name. In this case the purpose as set forth in section 2 and the act of assembly under which the society was incorporated are neither the purpose, nor the act of assembly enacted for the incorporation of fraternal benefit societies. Section 7 of the charter is in conflict with section 2, and the act under which this society was incorporated, therefore, is of no binding force. We are, therefore, of the opinion that this is a beneficial society.

It being a beneficial society, we think it comes under the jurisdiction of the Insurance Commissioner under section 29 of the Act of May 20, 1921, P. L. 916, which provides as follows: "Beneficial societies, other than those specifically exempted herein, without ritualistic work or a representative form of government, transacting any class of insurance, shall be required to comply with this act. All such societies or associations shall, on and after the passage of the act, file with the Insurance Commissioner copies of their charter, constitution and laws, and annually thereafter make a report in such form as the commissioner may require, showing their condition and standing on the 31st day of December preceding, and of their transactions for the year, and the commissioner may at any time make an examination of the books and accounts of any such society." Under this section of the act, this beneficial society, not being one of those specifically exempted, must, amongst other things, make a report to the Insurance Commissioner in such form as the latter may require, and the latter may at any time make an examination of the books and accounts of the society.

Under section 502 of the Act approved May 17, 1921, P. L. 789, it is provided: "Whenever any domestic insurance company, . . . including all corporations, associations, societies and orders which are subject to examination by the Insurance Commissioner, . . . *(a)* is insolvent; . . . *(e)* is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policy-holders, or to its creditors, or to the public, or *(f)* has wilfully violated its charter or any law of the Commonwealth, the Insurance Commissioner shall communicate the facts to the Attorney-General, who shall, after hearing, apply to the Court of Common Pleas of Dauphin County, or to the court of any county in which the principal office of such company, association, exchange, society or order is located, for an order directing such company, association, exchange, society or order to show cause why its business should not be closed and the Insurance Commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interests of its policy-holders, creditors, stockholders or the public may require."

We are, therefore, of the opinion that the procedure to be followed by the Insurance Commissioner and the Attorney-General under this section was properly followed in this case.

We have nowhere in the act a definition of solvency or insolvency of a beneficial society. Our Supreme Court, however, has defined it in the case of Taylor v. Order of Sparta, 254 Pa. 556. In quoting from the case of Com. ex rel. v. Tradesman's Trust Co., 237 Pa. 316, in an opinion by Mr. Justice Mitchell, it said: " 'Insolvency in its legal sense, as dealt with by the law regulating banks, trust companies and kindred corporations, exists whenever such an institution, from any cause, is unable to pay its debts in the ordinary or usual course of its business.' It is evident that the Order of Sparta is not insolvent in this sense." Applying this definition of insolvency to the defendant corporation, we cannot find it to be insolvent. The evidence discloses its obligations are for sickness, accident, burial, death, accidental or natural, and annuities, all of which are authorized by the charter. In the year 1926, for such obligations, the corporation paid out $14,470.71; its other expense in the conduct of its business for the year amounted to $56,465.28, making a total expenditure of $70,935.99, all of which was met by the income during the same period made up by dues, premiums, rents and other miscellaneous receipts, totaling $97,419.60, and at the expiration of this period the defendant corporation had a surplus of $93,605.04. The contention of the Commonwealth is that the company is not actuarially solvent; that is, that the ratio of assets, contingent and otherwise, to contingent and matured liabilities is not at least 100 per cent., but, on the other hand, is very much less. We find nowhere in the law relating to beneficial societies such requirement of solvency, but, on the other hand, such requirement only as is defined by the Supreme Court, quoted above. We find from the evidence submitted that the society is able to pay its debts in the ordinary or usual course of its business, and, therefore, is not insolvent.

We cannot find from the evidence in the case that the corporation is in such a condition that its further transaction of business will be hazardous to its policy-holders, to its creditors or to the public. The corporation has been in existence for a period of about seven years and up to this time has promptly met all of its financial obligations. The outstanding obligations, as we have quoted above, are for sickness, accident and death, accidental or natural, and annuities. The evidence shows that the loss accruing from sickness, disability

or death in the ordinary course of business will be met by the dues, premiums and miscellaneous income. As to the annuities, the contract is one that is quite favorable to the defendant corporation, in that no annuity is to be paid unless the member was a member for fifteen years and has reached the age of sixty-five, and that in no one year shall more be paid out in annuities than will equal the income from investments, plus 2 per cent. of the annuity fund. The evidence discloses that the defendant corporation has discontinued the Christian Workers Policy and will not in the future conduct any business along this line. If this is adhered to, the scope of liabilities of the defendant corporation will be reduced. We cannot find that the corporation is in such condition that its further transaction of business will be hazardous to its policy-holders, creditors or to the public.

As to the last reason assigned by the Attorney-General, to wit, that the corporation has wilfully violated its charter and the law of the Commonwealth, the evidence discloses that the defendant corporation was issuing an accident benefit policy, known as the Christian Workers Policy, with a maximum liability of $2200 and a minimum liability of $500. The Commonwealth contends that the corporation, in doing this, was operating as a general accident and health insurance company, and, in doing so, was violating its charter and the law. One of the purposes as disclosed by the charter is to provide protection to its members by maintaining funds from dues collected from the members, to be used for beneficial and protective purposes in case of the disability of any of them. An examination of the policy in question discloses that the member protected by the policy paid annual dues in the amount of $10. We see no violation of the charter or the law in the corporation issuing this policy. It is not insurance; it does not come within the definition of insurance as we have previously quoted it, and we think it is specifically provided for in the charter of the corporation.

The Commonwealth also contends that the defendant corporation is not a beneficial association in which the privileges of membership are restricted to a class. Even if this be so, it is not a violation of the charter or the law. The charter, by section 8, provides, amongst other things, "that any clergyman or other Christian worker, as may be more fully described in the by-laws, . . . may become a member of this society upon the payment of a membership fee of three ($3.00) dollars." The by-laws set forth the various persons designated as Christian workers and eligible to become members, and there is no evidence that there were members other than those designated in the charter and by-laws.

Another contention of the Commonwealth for dissolution is that the issuing of a contract carrying annuity benefits makes it incumbent upon the corporation to provide a fund for the payment of such annuities when they come due. The by-laws provide that the total amount of annuities paid in any one year shall not exceed the income of the invested funds of the society, plus 2 per centum of the annuity fund. This provision requires that an annuity fund be set up. This could be done by withdrawal from the surplus. The failure to do this when the means are at hand with which to do it is not sufficient reason to dissolve the corporation.

It is also contended that the defendant has failed to comply with the provisions of the Act of May 23, 1891, P. L. 107. The defendant is not bound so to comply. The last sentence of that act is that it shall only apply to companies employing agents and doing a general public insurance business. The testimony discloses that this company does not employ agents and that it does not conduct a general public insurance business.

36          DISTRICT AND COUNTY REPORTS:          [10 D. & C.]

Commonwealth ex rel. Attorney-General v. The Ministers Protective Society.

There are some matters which, while not so serious as to require a disso-
lution of the corporation, yet we think should be discontinued or changed, to
wit, the payment of large annual directors' fees and salaries which are per-
haps excessive in consideration of the services rendered by the persons receiv-
ing them and the high cost of conducting the business of the society. There
is a disposition, we think, as disclosed by the testimony on the part of the
officers of the corporation, to remedy such evils or defects. This can well be
done by heeding the advice of the Insurance Commissioner and legal counsel
relating to such matters.

And now, July 5, 1927, upon due consideration, the rule to show cause why
the corporation should not be dissolved is discharged.

From C. P. Addams, Harrisburg, Pa.