# Blauch, Appellant, *v.* Johnstown Water Company.

*Corporations—Water companies—Eminent domain—Act of April 29, 1874, P. L. 73—Act of May 16, 1889, P. L. 226; June 19, 1871, P. L. 1360—Equity—Bill for injunction—Approval of bond—Improper use of water—Collateral attack.*

1. A water company incorporated by a private act, which has accepted the provisions of the Constitution of 1874, and the Act of April 29, 1874, P. L. 73, relating to the creation and powers of corporations, acquires under the Act of May 16, 1889, P. L. 226, amending the Act of 1874, and conferring upon water companies additional powers, the right of eminent domain, in the exercise of which, it may appropriate so much of the waters of a river, as may be necessary for its corporate purposes and does not by accepting the provisions of the Act of 1874 lose or surrender its franchise to supply five boroughs, designated in its charter, and was not thereby required to confine its supply of water to one of the five boroughs mentioned therein.

2. In a suit in equity to test the right of a water company to appropriate the water of a river under its alleged right of eminent domain, the fact that the bond filed to secure the payment of the damages had not been approved by the court is not material where it appears that the water of the stream had been appropriated by the company sixteen years before plaintiff purchased his land, of which plaintiff had full knowledge when he purchased.

3. The propriety of the use made of water which a water company, in the exercise of its franchise, has the right to take, cannot be questioned under the Act of June 19, 1871, P. L. 1360 by a private individual collaterally. If such company makes any improper use of the water which it takes, it is answerable to the Commonwealth alone.

Argued Sept. 29, 1914. Appeal, No. 215, Oct. T., 1914, by plaintiff, from decree of C. P. Cambria Co., Sept. T., 1912, No. 12, refusing an injunction in case of Nathaniel Blauch v. The Johnstown Water Company, Lessor, and the Manufacturers' Water Company, Lessee. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before STEPHENS, P. J.

The appellant filed a bill to restrain the Johnstown Water Company from taking the waters of a stream and furnishing it to the Manufacturers' Water Company for the purposes of the latter company. The facts appear in the following extract from the opinion of the court dismissing the bill:

Nathaniel Blauch, the plaintiff, by deed dated the 14th day of December, 1905, acquired title to nine acres of land in Stonycreek Township, Cambria County, and by deed dated the 14th day of October, 1907, he acquired title to nine additional acres of land in said township, making a total of eighteen acres, the same being part of a larger tract known as the "Emanuel Blauch farm," and which was bounded on the one side by the Stonycreek river. That part of said tract of land owned by the plaintiff is specially adapted to truck farming and is used by him for that purpose, and he has, during dry seasons in times past, used the water from Stonycreek river for irrigation purposes and for his stock.

The Johnstown Water Company was incorporated by special act of assembly on April 11, 1866, P. L. 723, for the purpose of "introducing from some convenient source a sufficient supply of pure and wholesome water into the Boroughs of Johnstown, Conemaugh, Millville, Prospect, Cambria, and the vicinity."

On the 10th day of July, 1888, the Johnstown Water Company accepted the provisions of the constitution of 1874, and the act of assembly of April 29, 1874, entitled

"An act to provide for the incorporation and regulation of certain corporations," and pursuant to its incorporation and the Act of April 29, 1874, and the several supplements and amendments thereto, said company has been and now is furnishing water to the public in the districts named in its charter, all of which are now and have been since the year 1890 within the corporate limits of the City of Johnstown.

The Johnstown Water Company, prior to May 31, 1889, appropriated the waters of the Stonycreek river at Border's dam, four and five-tenths miles above the land now the property of the plaintiff, the record evidence of which was destroyed by the flood of May 31, 1889, but this action was ratified by said company by resolution of the board of directors of said water company on the 17th day of February, 1900, and in pursuance of said original appropriation of said waters by the said company, to wit, in the year 1889, the said Johnstown Water Company, one of the defendants, erected a dam across the Stonycreek river at Border's, which is known as "Border's dam," located four and five-tenths miles above the plaintiff's land. From this dam water was taken by means of a thirty-six-inch main which was laid and completed by said water company in October, 1891, and water from the dam was conveyed to the borough of Johnstown and the several adjoining districts named in the charter Act of 1866, all of which, since 1890, have been within the corporate limits of the said City of Johnstown.

The Manufacturers' Water Company was incorporated on the 19th day of February, 1900, under clause 9 of section 2 of the general corporation Act of the 29th of April, 1874, as amended and supplemented by the Act of May 16, 1889, P. L. 266, "for the purpose of supply, storage and transportation of water and water power for commercial and manufacturing purposes in the district composed of the county of Cambria." In November, 1910, the charter of said Manufacturers'

Water Company was amended by decreasing the territory designated in the original charter grant, to wit, "the district composed of the county of Cambria" to "the district composed of the City of Johnstown, Cambria County, Pa.," excluding all other parts of Cambria County.

On the 12th day of July, 1900, the Johnstown Water Company leased its said thirty-six-inch main, together with the Border's dam and all structures, property and rights connected therewith, to the said Manufacturers' Water Company for the term of ninety-nine years from the 12th day of July, 1900, the Johnstown Water Company reserving in said lease "the right to take water from the said mains for the purpose of distributing the same to domestic consumers as at present under its franchise as a public water company," and the said agreement further providing "that if owing to accident, drouth or any other like reason, either of said parties may have a deficiency of water for its purposes, the other party will supply such deficiency out of any surplus beyond its own needs which it may possess."

Under these conditions water has been furnished to the public for domestic purposes within the said City of Johnstown for the past twenty-three or twenty-four years, as well also to the said Manufacturers' Water Company for the past twelve years, by the Johnstown Water Company. The plaintiff, Nathaniel Blauch, had full opportunity to see and know, and did know, of the appropriation of the waters of Stonycreek river by the Johnstown Water Company, and the laying and completion of its water main in the year 1891, and it was with this knowledge that he purchased, in 1905 and 1907, the land now opened and operated by him as a truck farm, though he did not know that the Johnstown Water Company had leased its said thirty-six-inch main to the Manufacturers' Water Company until the summer of 1911. When demand was made by him for damages in the year 1912, and the parties failed to agree, a bond

was filed in the Court of Common Pleas of Cambria County for approval on the 23d day of April, 1912, to which exceptions were filed by the plaintiff in this suit.

The Johnstown Water Company has furnished water to the Manufacturers' Water Company under the lease of July 12, 1900, and it in turn furnishes water to the Cambria Steel Company, the Lorain Steel Company, the Pennsylvania Railroad Company and other manufacturing and industrial institutions, which were furnished water from the Stonycreek river by means of the said thirty-six-inch main by the Johnstown Water Company before the incorporation of the Manufacturers' Water Company and the lease to it of said thirty-six-inch main and all other necessary equipment to enable it to deliver water to said manufacturing institution, excepting and reserving, however, to the Johnstown Water Company the right to take water from said main as may be necessary for its corporate purposes.

The court on final hearing dismissed the bill.   Plaintiff appealed.

*Errors assigned* were in dismissing various exceptions to the chancellor's conclusions of law, and the decree of the court.

*Frank P. Barnhart,* for appellant.—The Manufacturers' Water Company does not have the right to eminent domain: Bly v. Water Company, 197 Pa. 80; Com. v. Flannery, 203 Pa. 28; Victor Coal Co., 13 Pa. D. R. 616.

The Johnstown Water Company does not have the right of eminent domain.

The fact that the bond was not approved entitles the plaintiff to relief: Bland v. Tipton Water Co., 232 Pa. 285.

*H. S. Endsley,* with him *J. C. Davies,* for appellees.—

The Johnstown Water Co., by reason of its acceptance of the Constitution of 1873 and of the Corporation Act of 1874, was not compelled to confine its operations to other and different territorial limits than those specified in its act of incorporation.

Whether the original charter granted by the Commonwealth to The Manufacturers' Water Co. was invalid can be questioned by the Commonwealth only.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

We are not asked on this appeal to disturb any fact found by the court below. The complaint of the appellant, as gathered from the assignments of error, is of legal conclusions which led to a dismissal of his bill, filed under the Act of June 19, 1871, P. L. 1360.

What injuries the appellant, if he is injured, is the diversion of the waters of Stonycreek river four and one-half miles above the point where it flows through or along his land. The water so diverted is taken by the Johnstown Water Company, and, if the rights of the appellant are invaded, as alleged in his bill, they are invaded by that company. The limit of the court's inquiry in this proceeding was, therefore, to ascertain whether that water company does in fact possess the right or franchise to take the water: Mory v. Railroad Company, 199 Pa. 152; Windsor Glass Company v. Carnegie Company, 204 Pa. 459; Bland v. Tipton Water Company, 222 Pa. 285.

The Johnstown Water Company was incorporated under the special Act of April 11, 1866, P. L. 723, "for the purpose of introducing, from some convenient source, a sufficient supply of pure and wholesome water, into the Boroughs of Johnstown, Conemaugh, Millville, Prospect, Cambria and the vicinity." Neither in the act incorporating it nor in the provisions of the Act of March 11, 1857, P. L. 77, under which it was to be organized and managed, was the right conferred upon it to take water by condemnation proceedings; but, in the

Act of April 24, 1869, P. L. 93, amending the Act of 1857, the right of the company to take water is clearly recognized, if not expressly conferred. We need not, however, dwell upon this, for, on July 10, 1888, the Johnstown Water Company accepted the provisions of the Constitution and of the Act of April 29, 1874, P. L. 73. By its acceptance of them it became entitled, under the twenty-sixth section of the Act of 1874, "to all of the privileges, immunities, franchises and powers" conferred by that act upon corporations to be created under it. It was amended by the Act of May 16, 1889, P. L. 226, which expressly confers upon a water company the right "to appropriate so much of the water from the rivers, creeks, canal water rights and easements, within or without the limits of the city, borough or place in which said company may by its charter be located, as may be necessary for its purposes." We need say nothing more in support of the unavoidable conclusion of the court below that the Johnstown Water Company does possess the right of eminent domain, in the exercise of which it may take the waters of Stonycreek river at Border's dam.

But it is contended that, even if the Johnstown Water Company did accept the provisions of the Act of 1874, it did not, by such acceptance, acquire the right of eminent domain, inasmuch as it failed to designate which one of the five boroughs named in the Act of 1866, incorporating it, it proposed to supply with water. An answer to this is that the only territory which it is now supplying, and has been supplying for nearly twenty-five years, is the City of Johnstown, and during all of that period the said five boroughs have been embraced within the limits of that municipality. Another answer is that the water company neither lost nor surrendered, in accepting the provisions of the Act of 1874, the franchise or privilege, specially conferred upon it by the Act of 1866, to supply five named boroughs with water. Bly v. White Deer Mountain Water Company, 197 Pa. 80,

is, therefore, without application. If the proposition contended for by counsel for appellant be correct, that when the Johnstown Water Company accepted the provisions of the Act of 1874 it was bound to confine its supply of water to one of the five boroughs named in the act incorporating it, it would mean that the company would have been compelled to abandon and sacrifice all of its mains and its supply system in four of the said five boroughs. Such a situation surely was never within the contemplation of the legislature.

Another reason advanced in support of the prayer for an injunction is that the bond of the Johnstown Water Company, to secure payment of damages to the appellant, had not been approved by the court below at the time this bill was filed. True, the bond had not been approved, but it had been filed, and its approval was excepted to by the appellant solely on the ground of the insufficiency of its amount. In this equitable proceeding, in which the only question for consideration is whether the Johnstown Water Company possesses the right of eminent domain, the complaint of the appellant of the nonapproval of a bond is to be regarded as unavailing when it is remembered that the water of the stream was actually appropriated by the water company at least sixteen years before he purchased the first of his two tracts of land, and that he purchased both with full knowledge of such appropriation of the water. If the case were one in which the Johnstown Water Company was now, for the first time, attempting to take the water, the failure to have its bond approved might be a good ground of complaint by the appellant.

The taking of the water from Stonycreek river is the injury done to the appellant, as already observed, if he has been injured in his private rights. This taking is by the Johnstown Water Company under its undoubted right of eminent domain. The Manufacturers' Water Company has not attempted to take the water from the stream. What it has done has been merely to enter into

a contract or agreement with the taking company, by the terms of which it gets the water taken by that company. If the taking company is making an improper use of the water which it takes in the exercise of a clear franchise, it is answerable for its misconduct to the Commonwealth alone. The Act of 1871 confers no right on a private individual to ask a court to pass upon the misbehavior of a corporation, or to arrest its misconduct, and in this proceeding the question of the alleged improper use of its franchise by the Johnstown Water Company is not to be considered. "The Act of 1871 contemplates nothing more than that it shall be made to appear from the charter, that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant, but when we get beyond this, we assume something with which we have no business in a collateral proceeding: we assume to assert the right of a third party, the Commonwealth, who may or may not, at her own option, insist upon the observance of those rights": Western Pennsylvania Railroad Company's App., 104 Pa. 399. "Under the Act of 1871 the inquiry is limited to the grant in the charter to do the thing complained of. If the power is there given, the authority of the court to interfere is at an end. The further questions of good faith in obtaining the charter or in acting under it can only be raised by the Commonwealth": Windsor Glass Company v. Carnegie Company, supra.

The twenty-two assignments of error are overruled and the decree is affirmed at the cost of the appellant.