## Mier *v.* Citizens Water Company, Appellant.

*Water companies—Eminent domain—Appropriation of stream—Legal formalities—Improper taking—Improper use of waters taken—Rights of riparian owners—Equity—Injunction.*

1. The presumption is that a water company appropriates the waters of a stream under its charter for a lawful purpose.

2. The legal formalities necessary for the condemnation of the

water of a stream by a water company are sufficiently complied with where the company adopts a resolution that "for the purpose of supplying the public with water, and for its corporate purpose," the company takes and appropriates all the waters of certain named streams, designating in such resolution the tracts of land affected by the appropriation, and attaching plots showing the location of the lands, dams, intakes and other works of the condemning company, and where it further appears that locations had been staked on the ground, and as thus marked had been adopted by resolution of the company. The failure of the resolution to say in terms that the waters appropriated were intended to supply the public in the borough which the company was incorporated to supply, naming such borough, is immaterial where it states that the waters appropriated were taken for the "corporate purpose" of the water company.

3. The taking of water by a water company for the direct supply of the public in townships and municipalities where the company has no legal right to furnish such is ultra vires and will be enjoined at the instance of a riparian owner affected, but where the taking is mainly for the purpose of supplying citizens within the proper territorial limits of the company, the furnishing of a small supply to persons outside of the limits is a mere incident of the main purpose and the taking will not be enjoined, and in such case if the water company exceeds its corporate powers by making an improper use of the water which it takes, it is answerable to the Commonwealth alone.

Argued May 10, 1915. Appeal, No. 309, January T., 1914, by defendant, from decree of C. P. Fayette Co., No. 388, in Equity, awarding an injunction in case of Ada E. Mier and Jennie M. Miller v. Citizens Water Company. Before BROWN, C. J., MESTREZAT, ELKIN, MOSCHZISKER and FRAZER, JJ. Reversed.

Bill in equity to restrain appropriation of water of a stream by a water company under its power of eminent domain. Before VAN SWEARINGEN, J.

The facts appear by the opinion of the Supreme Court.

The court awarded an injunction restraining the defendant from diverting the water of the stream in question. Defendant appealed.

*Error assigned,* among others, was the decree of the court.

*R. W. Playford,* for appellant.

*A. E. Jones* and *E. C. Higbee,* of *Sterling, Higbee* and *Matthews,* for appellees.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

This proceeding was instituted by riparian owners to restrain the defendant water company from taking, appropriating or diverting the waters of Spruce Creek Run so as to trespass upon or interfere with the rights of complainants. The bill was filed 19th July, 1902, and the defendant answered 25th August, 1902. The case was pending for eleven years before it was called for hearing 5th of August, 1913. The permanent injunction issued 14th of February, 1914, and a few months later the present appeal was taken. Thus it appears that the case slumbered for about twelve years, during all of which time except for a few days before the preliminary injunction was dissolved by order of the court the water company made use of the waters appropriated, before any decisive action was taken.

The precise question for decision is whether the water company in the exercise of its right of eminent domain appropriated the waters in question for a lawful public purpose under its charter powers. Properly to determine this question it is necessary briefly to consider the purpose for which the water company was incorporated and what it did in condemning the waters of Spruce Creek for its corporate uses. It is conceded by both parties to the controversy that the water company had the right to appropriate waters for the supply of the public in the Borough of Scottdale. This power vested in the water company not only by its charter but by positive law. It is also agreed that even if the decree appealed from in the present case should be affirmed, the

water company may institute another proceeding to condemn the waters in question for the supply of the public in the Borough of Scottdale.   If what has already been done by way of condemning the waters in question accomplishes this very purpose, it would seem like driving around and around Robin Hood's barn to require a new appropriation when no useful purpose could be served by so doing.   Let us then see what the water company did when it undertook to condemn the waters of Spruce Creek for its corporate purposes.   At a meeting held 23d February, 1901, the following resolution was adopted:

"Resolved, That said Citizens Water Company for the purpose of supplying the public with water, and for its corporate purpose, take and appropriate all the waters of both branches of Spruce Creek in Bullskin Township, Fayette County, Pennsylvania, at, above and flowing into both said branches of Spruce Creek at the dams, intakes and waterworks of said company, located on the respective branches of said creek......."

This was followed by naming the tracts of land affected by the appropriation, and to the resolution there was attached plots showing the location of the lands, dams, intakes and other works of the condemning company.   The plots also showed that the locations had been staked on the ground, and as thus marked had been adopted by resolution of the condemning company. This was a sufficient appropriation within the meaning of the law:  Boalsburg Water Company v. State College Water Company, 240 Pa. 198.   Upon its face it is difficult to see how the water company exceeded its powers in appropriating the waters in question under the resolution to condemn.   The appropriation was made "for the purpose of supplying the public with water," and this the water company clearly had the right to do "for its corporate purposes."   It is true that the resolution did not say in terms that the waters appropriated were intended to supply the public in the Borough of Scott-

dale, but the water company was incorporated for this very purpose, and its location was defined by charter. The resolution does say that the waters appropriated are taken for the "corporate purpose" of the water company, and the only lawful corporate purpose this company enjoyed was to furnish water to the public at the place of its location. The presumption is that the water company appropriated the waters of the stream under its charter for a lawful purpose, and we see nothing in this record to warrant the conclusion that the appropriation was for an unlawful purpose. It is argued, and with much force, that the water company furnished a portion of the waters appropriated to persons, firms or corporations outside of the limits of the territory in which it had the right to furnish water to the public, and that by reason thereof the entire appropriation was unlawful. The learned court below took this view of the case and decreed accordingly. While this contention is plausible it is not convincing to our minds. The water company was incorporated to furnish water to the public in the Borough of Scottdale, and what it did by way of furnishing a small supply to persons outside of the borough limits was only a mere incident of its main purpose. If it exceeded its corporate powers by making an improper use of the water which it takes it is answerable to the Commonwealth alone: Blauch v. Johnstown Water Co., 247 Pa. 71.

It is also urged that the case at bar is ruled by Bly v. White Deer Mt. Water Co., 197 Pa. 80. This contention is based upon a misapprehension of what that case decided. The distinction was clearly pointed out by this court in Bland v. Tipton Water Co., 222 Pa. 285, wherein the present chief justice in discussing what had been decided in the Bly case, among other things said:

"What was enjoined was the taking of the waters of the creek for the purpose of directly supplying the same to the public in townships and municipalities other than

the one in which the water company was authorized to supply the same."

In the present case the court is asked to enjoin the water company from taking the waters of the creek for the purpose of supplying the same to the public in the Borough of Scottdale, where it is conceded it had the right to supply water to the public, and this is a very different proposition from that of enjoining the taking of water for the direct supply of the same to the public in townships and municipalities where the water company had no legal right to furnish such a supply. The Bly case is not an authority for the principle sought to be enforced in the present case. If the contention of appellees should prevail in this case any riparian owner acting upon his own initiative could enjoin a water company from appropriating the waters of a stream even for a lawful corporate purpose if per chance the water company supplied any consumer outside the limits of the territory in which it exercised its corporate functions. In no decided case has it been held that a riparian owner may do this thing and we are not convinced that the doctrine of the cases relied on by the learned court below should be so extended.

Decree reversed, permanent injunction dissolved and bill dismissed. Costs to be equally divided between the parties.