# Passyunk Avenue Business Men's Association, Appellant, *v.* The Public Service Commission.

*Public service companies—Trolley companies—Routes—Rerouting—Charters—Forfeiture—Act of May 3, 1905, P. L. 379.*

Under the provisions of Act of May 3, 1905, P. L. 379, the local authorities of any city, borough or township may enter into a contract with any street railway company operating within the municipal limits to secure the removal, or prevent the laying, of tracks already laid or to change the route of any street railway. The contract may not exceed fifty years and gives the local authorities and the street railway company the right to provide for the abandonment or modification of a charter route for that period. Such contract, when made, forms a part of the charter of the company with like force and effect as if the same were part of the original charter.

An ordinance providing for a general authority to a street railway company to relocate its line, without the formal consent of the municipality, as evidenced by a contract, is not in accordance with the provisions of the Act of 1905.

*Public service companies—Public service company law—Rerouting—Municipal consent—Certificate of public convenience.*

Under the terms of the Public Service Company Law the Public Service Commission must pass upon the question of the convenience or necessity to the public of any contemplated change in the facili-

ties of a public service company. Its orders are administrative and, since they are made from the standpoint of public convenience only, they cannot be made a substitute for a writ of quo warranto or other legal proceeding in which it may be judicially determined what franchises claimed by any chartered company are active and in full force. The commission may regulate the action of public service companies in the respects provided for in the Public Service Company Law, but it cannot expand their powers beyond the limits established by their charters.

*Public service companies—Charters—Forfeiture of charters.*

When the Commonwealth or a municipality becomes a party to the proceeding the obligations of the corporation under its charter and contracts are material to be considered, but when the plaintiff is an individual, having no interest different from that of the public, there is nothing in the statute which clothes him with the authority of the Commonwealth or the municipality to raise any question other than whether the determination of the commission is reasonable, "having regard to the general convenience and safety of the public."

A finding of the commission that the rerouting of certain street car lines, which is based entirely with a view to the general convenience and safety of the public, and which does not consider the charter rights of the public service company involved, is an administrative order only, and will not be disturbed by the appellate court.

Argued May 5, 1919. Appeal, No. 115, October T., 1919, by plaintiff, from order of the Public Service Commission, Complaint Docket No. 2359-1918, in the case of Passyunk Avenue Business Men's Association v. The Public Service Commission, on appeal, and Philadelphia Rapid Transit Company and Frankford and Southwark Philadelphia City Passenger Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Affirmed.

Complaint against the rerouting and abandonment of certain street car lines in the City of Philadelphia.

The opinion of the Superior Court states the case.

The Public Service Commission dismissed the complaint.

244 PASSYUNK A.B.M.ASSN., Appel., *v.* PUB. SER. COM.

Assignment of Error—Opinion of the Court. [73 Pa. Superior Ct.

*Error assigned* was the order of the commission.

*C. Oscar Beasley* and *Edward B. Martin,* for appellant, cited: Central Germantown Avenue Business Association v. Philadelphia Rapid Transit Company, 5 Pa. Corp. Rep. 297; Martin v. Second and Third Streets Pass. Ry. Co., 3 Phila. 316; Comm. v. The Erie & N. E. R. R. Co., 27 Pa. 339.

*Ellis Ames Ballard,* for Philadelphia Rapid Transit Company, cited: Gyger v. Phila. City Passenger Ry. Co. et al., 136 Pa. 96; Act of March 22, 1887, P. L. 8; Pinkerton v. Pennsylvania Traction Co. et al., 193 Pa. 229; Act of March 15, 1895, P. L. 65.

*John Fox Weiss,* Assistant Counsel, and with him *Berne H. Evans,* Counsel, for the Public Service Commission.

OPINION BY PORTER, J., December 8, 1919:

The appellant is a corporation of the first class, organized as a business and neighborhood improvement association. It filed with the Public Service Commission a complaint against the Philadelphia Rapid Transit Company and the Frankford & Southwark Philadelphia City Passenger Railroad Company, the Lombard & South Streets Passenger Railway Company being by subsequent amendment brought in as a party respondent, averring that the respondents possessed a charter from the State to operate a line of street railway over certain streets of the City of Philadelphia, one of said streets being Passyunk avenue from South street to the Schuylkill river; that the respondents had operated street railway cars upon said streets for more than fifty years; that the respondents had notified the public that the street car service on Passyunk avenue would be absolutely and permanently discontinued, on November 24, 1918, and that no cars would be run on Passyunk avenue.

The complainants prayed the Public Service Commission to order and direct the respondents "to continue the service of the cars upon the said line as hereinbefore set forth along the same route now in use, and that the respondents be restrained from discontinuing the said line or any part thereof without the order of the commission after due notice." The respondents filed an answer stating that while there was vested in the Frankford & Southwark Philadelphia City Passenger Railroad Company franchises to maintain tracks on all of the streets mentioned in the complaint, the route mentioned in the complaint was not granted as a route by any particular franchise; that the franchises are to be found partly in the charter of the Lombard & South Streets Passenger Railway Company, Act of May 16, 1861, P. L. 704; and partly in the supplements thereto approved April 14, 1864, P. L. 353; May 18, 1865, P. L. 844; April 4, 1872, P. L. 964; and April 18, 1873, P. L. 815; that the line of cars about to be rerouted passed over other streets, covered by other charters; that the change would shift the cars operated on Passyunk avenue to Snyder avenue; that free transfers would be given to all lines crossing Snyder avenue north and south and that the change would result in improved public service. It averred that the Philadelphia Rapid Transit Company, by virtue of a system of leases and stock control, operated practically all of the street car lines in the City of Philadelphia; that by statute it was authorized to operate all of the various chartered lines and routes as a general system, laying out routes and lines over portions of charters originally granted, in a manner which in the judgment of the company would best serve the public, and that the proposed rerouting of "line 81," now complained of, would give better service to the people now served by that particular line and also materially aid in the improvement of service throughout the City of Philadelphia. The answer admitted the averment of the complaint that the service on Passyunk avenue was to be

absolutely and permanently discontinued and that no cars were to be run on that street. It developed at the hearing that the respondents did not propose to abandon the entire Passyunk avenue line, but only that portion of it east of Sixteenth street and north of Snyder avenue, while they still proposed to operate that part of the line covered by the franchise west of Sixteenth street. The Public Service Commission found, after a hearing, that the service on the Passyunk avenue line east of Sixteenth street has been very much congested and that some means should be adopted to relieve this congestion; that the plan proposed by the traction company seemed to accomplish this purpose and to afford to the traveling public a speedier and better service than is possible under the past arrangement, that the riders will have the advantage of transfers in both directions, a condition that does not exist under the present plan; that while the proposed plan will inconvenience some persons, the change will result in much more adequate and efficient service to the public as a whole, and, for these reasons, the complaint was dismissed. The complainant appeals from that determination.

The question presented involves the consideration of the rights and powers of the transit company, derived from the special acts of assembly granting charters to the street railway company which it operates and the statutes authorizing the incorporation and regulating the operating company, as well as the powers of the Public Service Commission and the effect of its orders. Passyunk avenue, from South street to the Schuylkill river, was an essential part of the street railway line which the Lombard & South Streets Passenger Railway Company was, by the acts granting its charter, authorized to construct and operate. That corporation, or the Frankford & Southwark Philadelphia City Passenger Railroad Company, to which its rights passed, built the railway and have for many years operated it as a street passenger railway, throughout its entire line. **Having**

accepted the charter and acted upon and under it, they and their successors are bound in good faith to comply with its terms. They cannot, as against the State, operate that part of the line west of Sixteenth street and refuse to comply with the terms of their charter and cease to operate the line on Passyunk avenue east of Sixteenth street, unless they show statutory authority for so doing: Commonwealth v. Erie & North-East Railroad Co., 27 Pa. 339; Martin v. The Second & Third Streets Passenger Railway Co., 3 Phila. 316. Many statutes regulating street railways, providing for the incorporation of motor power companies, authorizing them to lease passenger railway companies and upon like subjects, have been enacted, but few of them, however, have any direct bearing upon the question here presented. The Act of May 15, 1895, P. L. 65, authorized traction or motor power companies, or street railway companies, owning, leasing, controlling or operating different lines of street railways of different companies, "to operate as a general system so much of said different lines as occupy streets, and from time to time to lay out such new routes or circuits over the whole or any part of such street or streets occupied by the tracks of the different companies which it thus owns, leases, controls or operates, and upon such routes or circuits to run cars for such distances and in such directions as will, in the opinion of the operating company, best accommodate public travel." This statute authorized the companies to establish new routes, to operate its cars over lines covered by the franchises of the different companies which it controls, to determine the distances which the cars on a particular circuit run upon the several streets and the direction in which cars shall be operated, but it cannot be construed to mean that the companies have the right to cease to operate cars upon any part of the line covered by the charters of the underlying companies and at the same time continue to operate cars upon other parts of that line. The Act of May 21, 1895, P. L. 93, empowers any company incor-

porated under the provisions of the Act of May 14, 1889, to abandon any portion of its road, with the consent of the authorities of the municipality within which said railway is located, without prejudice to its right to operate the remaining portion of its railway. This act can have no application in the present case for these companies were not incorporated under the Act of 1889, nor have they obtained the consent of the municipal authorities to the abandonment of any portion of the railway. The Act of May 3, 1905, P. L. 379, empowered the local authorities of any city, borough, or township, when they deemed it necessary for the public benefit and convenience, to secure the removal of any street railway tracks already laid, or prevent the laying of such tracks already authorized to be laid, or to change the route of any street railway on any street or streets, within the corporate limits, to enter into a contract, for a period not exceeding fifty years, with the street railway company or motor power company owning, leasing or operating such tracks, in order to accomplish such purpose. This statute provided that such contract, when made, should form a part of the charter of the company, with like force and effect as if the same formed a part of the original charter of such company. This statute gives to the local authorities and the street passenger railway company the right to provide by a contract for a definite period not exceeding fifty years, for the abandonment or modification of a charter route. This contract would now require the approval of the Public Service Commission. The Philadelphia Rapid Transit Company, in 1913, had undertaken the rerouting of the various street railway lines of the city, and an ordinance was adopted by the municipal authorities, the material portions of which are as follows: "That whenever the Philadelphia Rapid Transit Company shall certify to the Department of Public Works that it has no present use for any track, or portion of track and overhead trolley system on any street, that it may, with the assent of the Department of Public Works, tem-

porarily remove the same......and this action shall not affect the right of the Philadelphia Rapid Transit Company, or of the street railway company holding the franchise on said street to restore the said track and overhead trolley system at any time." This ordinance cannot be held to be a compliance with the provisions of the Act of May 3, 1905, above referred to. The statute imposes upon the local authorities the duty to determine that it is necessary for the public benefit and convenience to secure the removal of the street railway tracks and provides that the manner in which the purpose shall be accomplished is by entering into a contract, for a period not exceeding fifty years. The power to enter into a contract upon the part of the city is in the councils. The ordinance merely provides for a temporary removal of the tracks, leaving the traction company clothed with the right to restore them at any time. The statute clearly indicates that it was the legislative intention that the contract should be formally executed, for it is to form a part of the charter of the company, and it was certainly not the intention of the legislature that a charter should be amended by the mere assent, perhaps oral, of the head of one of the executive departments of the municipal government. The statute empowers the local authorities to enter into a contract that the street railway tracks should be removed from the streets for the period of time by the contract fixed, not to exceed fifty years. The ordinance did nothing of that kind, it merely gave the traction company permission to remove any track for which it had no present use, with the right to put it back again at any time that the company saw fit. This was not such a contract as was contemplated by the Act of 1905. The respondents cannot found any right to abandon part of the route specified by their charter upon the provisions of the Act of 1905, for they have not complied with the provisions of that statute. We find nothing in this record which would sustain the right of the respondents to abandon that part of their charter route east

of Sixteenth street, while continuing to operate that part of the line west of Sixteenth street. Whether the appellant can in this proceeding derive any advantage from this situation is an entirely different question.

This appellant, although a corporation, is merely a voluntary association of citizens and its rights arise no higher than those of its individual members, who have no interest different from that of the general public. If, therefore, the appellant has the right to assume the position of the Commonwealth to allege, as in a writ of quo warranto, that the charter of the street railway company has been or is about to be forfeited by any act of the company, that right must find its foundation in the Public Service Company Law, for outside of that statute such right does not exist: Western Pennsylvania R. R. Co.'s Appeal, 104 Pa. 406; Olyphant Sewerage Co. v. Olyphant Boro., 196 Pa. 553. The same principle applies to any right which the appellant seeks to assert under the provisions of the ordinances of the city granting to the street railway company the right to occupy the streets: Blankenburg v. Rapid Transit Co., 228 Pa. 338.

The determination of this appeal must depend upon the provisions of the Public Service Company Law, Act of July 26, 1913, P. L. 1374, the jurisdiction conferred by that statute upon the Public Service Commission and the effect of the orders of that body. Section 29, Article V, of the Statute declares that, except as therein expressly provided, none of the powers or duties conferred or imposed by the act upon the commission, and none of the orders, regulations, rules or certificates made or issued by the commission shall be construed to in anywise abridge or impair any of the obligations, duties, or liabilities of any public service company in equity or under the existing common or statutory law of the Commonwealth. And, except as therein otherwise provided, nothing in the act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Common-

wealth, it being the intention that the provisions of the act shall be cumulative, and in addition to such rights of action and remedies.

The Public Service Commission is an administrative body, not a judicial one, its orders, made from the standpoint of the public accommodation, convenience or safety solely, cannot be made the foundation for the judicial determination of what franchises do or do not belong to any corporation interested. Such matters must be determined as heretofore by a legal proceeding instituted in the courts for that purpose. An appeal from an order of the commission, either granting or refusing a certificate of public convenience, cannot be made a substitute for a writ of quo warranto or other legal proceeding in which it may be judicially determined what franchises, claimed by any chartered company, are active and in full force, it takes away from no company any right or power then legally existing. It may regulate the action of public service companies in the respects provided for in the act creating the commission, but it is not authorized to expand their powers beyond the limits established by their charters, nor has it power to enforce municipal consent where discretion is by law vested in the councils of a city: Allied A. of W. Phila. v. Public Service Commission, 70 Pa. Superior Ct. 13; Bethlehem C. W. Co. v. Public Service Commission, 70 Pa. Superior Ct. 499. It is true that in cases involving the rates which a public service company may be permitted to charge it has been repeatedly held that resort must be had to the Public Service Commission before the courts will interfere. The reason for this was clearly stated in St. Clair Boro. v. Tamaqua & P. E. Ry. Co., 259 Pa. 462. But when a public service company, or a municipality engaging in the business of a public service company, attempts to do something which under the law it has no power to do any party having a right to raise the question may invoke the action of the courts to protect that right without first making complaint to the Public Service Commission:

Bethlehem City Water Co. v. Bethlehem Boro., 253 Pa. 333. The statute, in Article II, Section 1, Paragraph m, requires street railways to furnish such cars and other facilities: "as the commission, having regard to the general convenience and safety of the public, may require." The determination of the commission in this matter is, when the complainant is a private individual, made solely with "regard to the general convenience and safety of the public" and cannot be said to be a determination of the right of the Commonwealth to set up a forfeiture of the charter, or the right of a city to insist upon the performance of any contract obligation. When the Commonwealth or the municipality becomes a party to the proceeding the obligations of the corporation under its charter and contracts are material to be considered but when the appellant is an individual, having no interest different from that of the public, we find nothing in the statute which clothes him with the authority of the Commonwealth or the municipality to raise any question other than whether the determination of the commission is reasonable, "having regard to the general convenience and safety of the public."

The Act of May 3, 1905, P. L. 379, above referred to, authorized the city and the street railway company to enter into a contract involving the abandonment of any part of the line for the period of time not exceeding fifty years, and thus amend the charter of the company. The Public Service Company Law, Article III, Section 2, Paragraph b, and Section 3, Paragraph a, requires the approval of such a contract by the Public Service Commission, while section 11 of the same article, which applies to all contracts between public service companies and municipal corporations, confers upon the commission this express authority: "Provided, That upon notice to the local authorities concerned, any public service company may apply to the commission, before the consent of the local authorities has been obtained, for the declaration by the commission of the terms and condi-

tions upon which it will grant its approval of such contract or agreement, if at all." The act thus confers upon the commission authority to act in an advisory capacity as to the particular subject-matter with which we are now dealing. The intervening appellee, the Rapid Transit Company, might have applied to the commission, for a declaration by it of the terms and conditions upon which it would grant its approval of a contract to be entered into with the municipality. It is very clear that such a declaration by the commission would not bind the municipality. The commission could not compel the municipality to enter into the contract and its determination would have been binding upon no one. In the present case the transit company did not apply to the commission, nor does it appear that notice was given to the municipal authorities; the appellant instituted the proceeding by a complaint presented to the commission. The fact that the application was not made by the Rapid Transit Company and that no notice was given to the local authorities did not, however, change the subject-matter presented for the determination of the commission, which really was "Does the convenience and safety of the general public require that the proposed rerouting of the cars and the temporary abandonment of part of the line should be prohibited"? Much testimony was taken by the commission as to the conditions prevailing not only in that particular part of the city but as to street car traffic generally, and the commission, after a full hearing, determined that the proposed change would be in the interest of the general convenience and safety of the public. The commission did not, however, make any order requiring any person to do anything; it merely dismissed the petition. This determination is purely advisory, it is not binding upon either the Commonwealth or the city, it amounts to nothing more than a declaration by the commission that the public safety and convenience will not be prejudiced if the city and the street railway company enter into a contract, the details to be approved

by the commission, providing for a change in the manner of operating the cars and a temporary abandonment of a part of the line. The statute conferred upon the commission the authority to act in this advisory capacity and the complainants are not in position to object to the exercise of that authority upon the ground that the city had no notice. The city is not bound by the determination, just as it would not have been bound if it had had notice. The Commonwealth and the municipal authorities are left perfectly free, in case the street railway company abandons a part of its line, to institute any proceeding for forfeiture of the charter or to enforce the obligations of any contract. We cannot, therefore, say that the determination of the commission is not in conformity with law. These appellants had the right to raise any question as to the reasonableness of the determination of the commission, which is a matter depending upon the evidence. Whether the public convenience and safety would be promoted by a change in the manner in which the cars were operated and the abandonment of a part of the line was an administrative question depending upon the facts and circumstances. The findings of fact upon which the commission based its determination were amply sustained by competent evidence and we cannot say that the commission did not act within its power in reaching the conclusion at which it arrived. It is not for us to consider the expediency or wisdom of the order, or whether, on like testimony, we would have made a similar ruling: Ben Avon Boro. v. Ohio Valley Water Company, 260 Pa. 289; Philadelphia & R. Ry. Co. v. Public Service Commission, 67 Pa. Superior Ct. 604.

The order of the Public Service Commission is affirmed and the appeal dismissed at cost of the appellants.

ORLADY, P. J., and HENDERSON, J., dissent.