Johnstown Water Co., Appellant, *v.* P. S. C. of Pa. et al.

Argued November 16, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*J. C. Davies,* for appellant.—A water company cannot be compelled to furnish service in a district not contemplated in its charter: Overlook Development Company v. Public Service Commission, 101 Pa. Superior Ct. 217; Phila. Rural T. Co. v. P. S. C., 103 Pa. Superior Ct. 256.

*Frank P. Barnhart,* and with him *Samuel R. DiFrancesco,* for Emily R. Hamilton et al., intervening appellees.

*John Fox Weiss,* Counsel and *E. Everett Mather, Jr.,* Assistant Counsel, for appellee, cited: Blauch v. Johnstown Water Co., 247 Pa. 71; Riverton Consolidated Water Co. v. Public Service Commission, 105 Pa. Superior Ct. 6.

OPINION BY BALDRIGE, J., January 25, 1933:

This appeal is from an order of the Public Service Commission, entered in a complaint filed by Emily R. Hamilton, Lawrence W. Campbell and the Westmont Realty Company, requiring the Johnstown Water Company, hereinafter called the company, to extend its mains in the borough of Westmont, Cambria County.

The company maintains that the service it is rendering to a part of Westmont Borough is voluntary and merely incidental to its charter privileges, and that the commission is without authority to order it to extend its lines further. It has been definitely decided that a water company cannot be compelled to furnish service in a district not contemplated in its charter: Allied A. of W. Phila. et al. v. P. S. C., 70 Pa. Superior Ct. 13; Passyunk A. B. M. Assn. v. P. S. C., 73 Pa. Superior Ct. 242; Swarthmore Boro. v. P. S. C., 80 Pa. Superior Ct. 99; Phila. Rural T. Co. v. P. S. C., 103 Pa. Superior Ct. 256, 158 A. 589.

The precise question, therefore, before us is: Does the company have charter obligations in Westmont which gives the commission jurisdiction to make such an order? The answer to this question obviously depends upon the extent of the company's corporate territory.

The company was incorporated in 1866 for the purpose of supplying water to the "boroughs of Johnstown, Conemaugh, Millville, Prospect, Cambria and vicinity." It accepted the Constitution and the Corporation Act of 1874. In 1889, the five boroughs, together with large contiguous territory to the respective boroughs, were incorporated into the city of

Johnstown. It has been determined that the company's charter imposes obligations in the contiguous territory now within the city of Johnstown, as that area is contemplated by the words "and vicinity": Blauch v. Johnstown Water Co., 247 Pa. 71, 93 A. 169. The company began rendering service to a part of Upper Yoder Township, adjoining Johnstown, in 1891. Westmont, situate on a plateau about 600 feet above and west of the city of Johnstown, was incorporated in 1892, and includes an area then served by the company. The water in this borough is supplied by pumping from a station in Johnstown to three tanks: No. 1, erected in 1891, has a capacity of 102,000 gallons; No. 2, erected in 1917, has a capacity of 250,000 gallons; and No. 3, having a capacity of 3,000,000 gallons, was erected in 1928 at its present site near the western limits of the borough as it is the highest available point. These storage facilities not only augment the supply to Westmont Borough, but dispense with three pumping stations. The present western boundary of the borough is approximately a mile from the original borough limits.

The claimants' properties are located near the northern boundary of the borough, where streets have been laid out, graded and paved. To give them service it would be necessary for the company to extend its lines approximately 2,800 feet. If the commission has the power to compel the installation of this line, further extensions might be required of the company. If the supply proved to be insufficient, the company would be without a legal right to condemn and appropriate water for this particular district, if outside of its charter territory: Bly v. White Deer Mt. Water Co., 197 Pa. 80, 46 A. 929. Then it would have a legal duty to perform, without reciprocal rights, which might be vital in discharging its public obligation to furnish water.

Croyle v. Johnstown Water Co., 259 Pa. 484, 103 A.

303, relied upon by all the parties to this litigation, involved the right of the company to exercise the power of eminent domain when furnishing water outside of its alleged territorial limits. The appellee argued that the finding of the trial judge, that the territory outside of Johnstown supplied by the company is in the "vicinity" of the boroughs named in this charter, is decisive of this case. It seems clear, however, that the Supreme Court did not rest its reasoning or conclusions on that finding, but decided the case on the theory that the supplying of water outside of the city was incidental to its main corporate functions. The opinion writer said (p. 487): "It is true that defendant is supplying water to persons outside the limits of Johnstown, but such supply is incidental to its main purpose, which is the supply of water to the public in the city of Johnstown, so that the case falls within the principle of Mier v. Citizens Water Co., 250 Pa. 536 [95 A. 704], in which it was held (syllabus), 'where the taking is mainly for the purpose of supplying citizens within the proper territorial limits of the company, the furnishing of a small supply to persons outside of the limits is a mere incident of the main purpose and the taking will not be enjoined.' " The Mier case, relied upon as controlling, was a proceeding instituted by riparian owners to restrain the water company from appropriating and diverting waters to supply the public outside of the borough of Scottdale. That water company was incorporated to furnish water in the borough only, and, therefore, it was alleged that its corporate powers were being exceeded. It will be noted that the meaning of "vicinity" was not there involved. It was purely a question of incidental service. So, in this case, we think that whatever service is rendered in Westmont Borough is incidental to the company's charter right, rather than under the words "and vicinity" in its corporate grant. Furthermore, if we assume "and vicinity" means ter-

ritory adjacent to Johnstown, that language certainly did not contemplate that the company's corporate right embraced all the area that has been or may be annexed by Westmont. In Sparks v. Pittsburgh Co., 159 Pa. 295, 302, 28 A. 152, the court held that "The sinking of the wells by appellee upon lands owned by it near Ellwood, two miles distant from the leased territory covered by the proposition, was not in its 'vicinity' and was not therefore a breach of the proposition." Under Exhibit No. 7, which is a map of Westmont Borough, it appears that, by the most direct highways, the claimants' properties are located two miles or more from the original borough line.

The Croyle case was decided in 1918, seven years before the annexation of a large territory by Westmont Borough, in 1925, and the substantial increase in population. Westmont Borough has been developing rapidly within recent years, so that it has grown from a relatively small community until there are now within the borough limits, 942 substantial residences that have a valuation of from twelve to fifteen million dollars. During the years 1930 and 1931, 44 residences were constructed within the borough, having a valuation of $365,000, and most of the development in and around Johnstown in recent years has been largely confined to that borough. In the entire City of Johnstown, during the same period, only 31 residences were erected, at a value of $156,000. The increase in the borough in the number of people and houses is greater than in any other municipality in that section. It thus appears that a substantial amount of water is, and will be, required to supply all the public therein.

Unquestionably, the commission may order a public —service company, chartered to supply a city or borough with water, to extend its facilities in any part of a charter district to accommodate the public (Phila. Rural T. Co. v. P. S. C., supra), and may regulate its activities in the place beyond such territory it volun-

tarily undertakes to furnish water, so that it may not impose arbitrary conditions or fix discriminatory or unreasonable rates: Reigle v. Smith, 287 Pa. 30, 134 A. 380. But a voluntary extension of its facilities does not and cannot enlarge its charter territory. Service to other parts of the borough has been extended under a policy of the company, requiring all parties seeking such extensions to give assurance of an adequate return on the required investment or the payment of part of the costs thereof. Any amount paid toward extensions, under the plan, is to be returned as the territory develops. The same terms were offered to these complainants, but they were not accepted.

Concluding as we do, that the district ordered to be served is not within the charter territory, the Public Service Commission is without authority to make an order compelling the company to extend its lines.

The order is reversed at the cost of complainants.